UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                                                    :
LEA ROSEN, individually and on behalf of all others                 :
similarly situated,                                                 :    **19-cv-5516 (ARR) (VMS)**
                                                                    :
            Plaintiffs,                             :    **OPINION & ORDER**
                                                                    :
  -against-                                                :    **NOT FOR ELECTRONIC**
                                                                    :    **OR PRINT**
LJ ROSS ASSOCIATES, INC.                                            :    **PUBLICATION**
                                                                    :
            Defendant.                              :
                                                                    :
------------------------------------------------------------------- X

ROSS, United States District Judge:

    Plaintiff Lea Rosen ("Rosen"), individually and on behalf of all others similarly situated, bring this action against LJ Ross Associates, Inc. ("LJ Ross"). Rosen alleges that LJ Ross mailed her two debt collection letters, which violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Rosen contends that the letters violate the FDCPA because by sending two letters, the defendant created confusion about the deadline to submit a written dispute, and because the letters incorrectly suggest that a consumer may only dispute her debt in writing. LJ Ross moves to dismiss these causes of action (Counts Four and Five) for failure to state a claim. Rosen also alleges that she does not actually owe the debt stated in the letters. Defendant does not move to dismiss the claims relating to the issue of whether the debt is actually owed (Counts One, Two, and Three). Instead, the defendant asks me to deny class certification on these claims. For the reasons described below I dismiss Counts Four and Five, and I reserve judgment on class certification for Counts One, Two, and Three.

1

## BACKGROUND

The plaintiff, Lea Rosen, alleges that on October 1, 2018, LJ Ross sent a letter to Rosen at 45 Throop Ave. 4L, Brooklyn, NY 11206-4379, seeking to collect a debt of $543.93 allegedly owed to creditor Con Edison. Am. Compl. Ex. 1, ECF No. 14-1. On November 21, 2018, LJ Ross sent Rosen a second, nearly identical letter. Am. Compl. Ex. 2, ECF No. 14-2. The only difference between the two letters is that the second letter lists 461 Bedford Ave, Brooklyn, NY 11211-6738 as Rosen's address.

LJ Ross's name, logo, and P.O. Box address appear on the top left-hand corner of the first page of each letter. Am. Compl. Exs. 1–2. Beneath that, the letter states Rosen's name and address. *Id.* There is an account summary in the upper right-hand corner, which lists the date of the statement, the current creditor (Con Edison), two account numbers, and an amount due ($543.93). *Id.* The body of each letter states the following:

> Dear Lea Rosen,
>
> Our client CON EDISON has referred your unpaid account to this agency for collection. Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> This communication is from a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose.
>
> Sincerely,
>
> L J Ross Associates, Inc.

*Id.* The letter then states in bold, "PLEASE SEE REVERSE SIDE FOR IMPORTANT INFORMATION." *Id.* The reverse side provides additional legal notices. *Id.*

Towards the bottom of the page, underneath the heading L J ROSS ASSOCIATES, INC., there is a telephone number with hours and an image of a telephone, a mailing address, and a website. *Id.* Below that, the consumer is instructed to "Detach Lower Portion and Return with Payment." *Id.* The detachable coupon reads "MAIL ALL CORRESPONDENCE TO" and then provides an address: L J Ross Associates, Inc., PO Box 6099, Jackson, MI 49204-6099. *Id.* There is a telephone number listed below the address. *Id.* The address and telephone number match those listed above the coupon. *Id.*

Rosen filed this action on September 30, 2019, alleging two causes of action: (1) violation of 15 U.S.C. § 1692e because sending two letters made it unclear when the deadline was to dispute the debt, and (2) violation of §§ 1692g and 1692e because the letter includes language that requires the consumer to dispute the validity of a debt by writing. *See* Compl. ¶¶ 36–85, ECF. No. 1. On December 3, 2019, the defendant served plaintiff with a motion to dismiss. *See* Def.'s Mot. to Dismiss ("Def.'s Br."), ECF No. 13. Rosen responded by filing an amended complaint on December 17, 2019, adding three causes of action which relate to a new claim that Rosen, on behalf of a purported class, did not in fact owe the debt alleged. *See* Am. Compl., ECF No. 14. On February 17, 2020, the defendant filed a new motion to dismiss, reasserting the arguments in its previous motion, and adding a new argument that class certification should be denied as to the three new causes of action.

**LEGAL STANDARD**

I. **Motion to Dismiss for Failure to State a Claim**

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the non-moving party. *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 113 (2d Cir. 2013) (citing *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009)). Thus, in deciding defendant's motion to dismiss, the court must accept the facts alleged in plaintiff's amended complaint as true. The complaint's allegations "must be enough to raise a right to relief above the speculative level*.*" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Only "a plausible claim for relief survives a motion to dismiss." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 476 (2d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555)).

II. **The FDCPA**

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To ensure that the statute protects the most vulnerable debtors, courts are to view debt collection communications "from the perspective of the 'least sophisticated consumer'" ("LSC"). *Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) (quoting

*Clomon v. Jackson*, 988 F.2d 1314, 1318–19 (2d Cir. 1993)). The LSC standard of review examines "how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996). However, "in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness." *Clomon*, 988 F.2d at 1319; *see also Rosa v. Gaynor*, 784 F. Supp. 1, 3 (D. Conn. 1989) ("The FDCPA does not extend to every bizarre or idiosyncratic interpretation by a debtor of a creditor's notice . . . [but] does reach the reasonable interpretation of a notice by even the least sophisticated [consumer]."). The least sophisticated consumer "is neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (citing *Russell*, 74 F.3d at 34). "[B]ecause the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law." *Quinteros v. MBI Assocs., Inc.*, 999 F. Supp. 2d 434, 437 (E.D.N.Y. 2014) (quoting *Castro v. Green Tree Servicing LLC*, 959 F. Supp. 2d 698, 707 (S.D.N.Y. 2013)).

### III. Validation Notice

#### A. Section 1692g

Section 1692g of the FDCPA requires a debt collector to communicate certain information to a debtor when attempting to collect a debt ("validation notice"). 15 U.S.C. § 1692g (2006); *Vetrano v. CBE Grp., Inc.*, No. CV 15-3185 (JS) (AKT), 2016 WL 4083384, at *5 (E.D.N.Y. Aug. 1, 2016). The purpose of the validation notice is to protect

consumers from "debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid" by "inform[ing consumers that they have] certain rights, including the rights to make a written request for verification of the debt and to dispute the validity of debt." *Lotito v. Recovery Assocs. Inc.*, No. 13–CV–5833 (SJF)(AKT), 2014 WL 4659464, at *3 (E.D.N.Y. Sept. 17, 2014) (internal quotations omitted) (quoting *Ellis*, 591 F.3d at 134 and *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 309 (2d Cir. 2003)). Specifically, the validation notice must include:

> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a); *Vetrano*, 2016 WL 4083384, at *5. While some subsections refer to written disputes, not all disputes are required to be in writing. Second Circuit precedent states that under § 1692(a)(g)(3), the debtor must be allowed to dispute debts orally. *Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 285–86 (2d Cir. 2013).

Not only must the debt collector convey the information in § 1962g to the debtor, but also he must convey it clearly. *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (citing *Russell*, 74 F.3d at 35). A validation notice is not legally sufficient

"if that notice is overshadowed or contradicted by other language in communications to the debtor." *Id.* (citing *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 85 (2d Cir. 1998)). "A notice overshadows or contradicts the validation notice 'if it would make the least sophisticated consumer uncertain as to her rights.'" *Id.* (quoting *Russell*, 74 F.3d at 35); *see also Vetrano*, 2016 WL 4083384, at *5 (quoting *DeSantis v. Comput. Credit, Inc.*, 269 F.3d 159, 161 (2d Cir. 2001)) ("'Even if a debt collector conveys the required information, the collector nonetheless violates the [FDCPA] if it conveys that information in a confusing or contradictory fashion so as to cloud the required message with uncertainty.'"). "Since 2006, this prohibition against 'overshadowing' has also been enshrined in the text of the FDCPA itself: '[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.'" *Belichenko v. Gem Recovery Sys.*, No. 17-CV-01731 (ERK) (ST), 2017 WL 6558499, at *6 (E.D.N.Y. Dec. 22, 2017) (quoting § 1692g(b)).

**B. Section 1692e**

Generally, § 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 USC § 1692e (1996); *see Russell,* 74 F.3d at 34; *Belichenko*, 2017 WL 6558499, at *5. "Section 1692e contains sixteen subsections, which 'set forth a non-exhaustive list of practices that fall within this ban.'" *Belichenko*, 2017 WL 6558499, at *5 (quoting *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016)). One of these subsections, § 1692e(10), is a "catch-all provision" barring "[t]he use of any false representation or deceptive means to

7

collect or attempt to collect any debt or to obtain information concerning a consumer." *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 194 (2d Cir. 2015) (quoting § 1692e(10)); *see also Belichenko*, 2017 WL 6558499, at *5.

"For the purposes of § 1692e, a 'collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.'" *Belichenko*, 2017 WL 6558499, at *6 (quoting *Russell*, 74 F.3d at 35); *see also Clomon*, 988 F.2d at 1319. "The fact that the notice's terminology was vague or uncertain will not prevent it from being held deceptive under § 1692e(10) of the Act." *Russell*, 74 F.3d at 35. "Significantly, courts in this Circuit have held that 'the standard for determining a violation of § 1692e(10) is essentially the same as that for § 1692g.'" *Papetti v. Rawlings Fin. Servs., LLC*, 121 F. Supp. 3d 340, 353 (S.D.N.Y. Aug. 5, 2015) (quoting *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 666 (S.D.N.Y. 2006)); *see also Tipping-Lipshie v. Riddle*, No. CV 99–4646, 2000 WL 33963916, at *4 (E.D.N.Y. Mar. 2, 2000) (citing *Vera v. Trans-Cont'l Credit and Collection Corp.*, No. 98 CIV. 1866(DC), 1999 WL 163162, at *3–4 (S.D.N.Y. Mar. 24, 1999) for the proposition that a misleading validation notice violates both sections 1692g and 1692e(10)).

## DISCUSSION

### I. Confusion Caused by Two Validation Notices

Count Four alleges that the inclusion of a validation notice in both the October and November letters violates the FDCPA because it creates confusion as to the deadline for the validation period. *See* Am. Compl. ¶¶ 85–102; Mem. of Law in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Br."), 12–15, ECF No. 19. LJ Ross sent the first letter to Rosen on October

8

1, 2018. *See* Am. Compl. Ex. 1. On November 21, 2018, LJ Ross sent Rosen another letter at a new address. *See* Am. Compl. Ex. 2. The letter contained the same validation notice, creating another thirty-day validation period. *See id.* Plaintiff argues that the LSC "would not understand if the validation period ran from the date of the first letter or, alternatively, from the second letter." Pl.'s Br. 12–13.

Defendant argues that *Brenker v. Creditors Interchange, Inc.* No. 03 CIV.6500 LTS DFE, 2004 WL 594502 (S.D.N.Y. Mar. 25, 2004), provides persuasive authority against Rosen's claim. In *Brenker*, the debt collector sent the consumer two dunning letters mailed five days apart. *Id.* at *1. The letters were regarding the same debt and each contained the same validation notice. *Id.* The court analyzed the issue as follows:

> [T]he two letters created no reasonable possibility of confusion in derogation of the debtor's rights. The initial letter accurately notified Plaintiff that she had thirty days from receipt of that letter in which to request validation. The second letter also described the validation period and related rights accurately. It did nothing to suggest diminution of the initial period; if anything, it re-started the period, thereby effectively extending Plaintiff's opportunity to seek validation of the debt. Nothing in the FDCPA prohibits a debt collector from giving a debtor more than the requisite 30–day validation period, and there is no evidence that Defendant took any action violative of Plaintiff's validation rights—such as by seeking to collect the debt before fulfillment of a request for debt verification—before or after delivery of the notices.

*Id.* at *2 (footnote omitted). Plaintiff argues that *Brenker* is distinguishable and should be limited to the facts of that particular case. *See* Pl.'s Br. at 13 (citing *Brenker*, 2004 WL 594502, at *2). Plaintiff argues that the instant case is different because the second letter was sent after the first validation period expired, and because the issue in *Brenker* was decided on summary judgment rather than a motion to dismiss. *Id.* But plaintiff does not explain why these distinctions should change the outcome, and I am not persuaded that

9

they do.

Numerous district courts around the country have rejected the claim that a debt collector violates the FDCPA by sending a second letter with a second validation notice. *See*, *e.g.*, *McCray v. Deitsch & Wright, P.A.*, 343 F. Supp. 3d 1209, 1218 (M.D. Fla. 2018) ("Both Collection Notices provided the required statutory FDCPA disclosures and did not diminish Plaintiff's rights to dispute the debt[.]"); *Greig v. Backer Aboud Poliakoff & Foelster*, LLP, No. 9:16-CV-81316-ROSENBERG/BRANNON, 2017 WL 57026, at *4 (S.D. Fla. Jan. 5, 2017) (quoting *Arend v. Total Recovery Servs., Inc.*, No. 05-CV-3064 (DLI)(JMA), 2006 WL 2064977, at *3 (E.D.N.Y. July 24, 2006)) ("It is neither deceitful nor false, even to the least sophisticated consumer, for Defendant to offer Plaintiff additional time to exercise his right to obtain validation of the debt."); *Curry v. AR Res., Inc.*, No. 16-517 (RMB/KMW), 2016 WL 8674254, at *3 (D.N.J. Nov. 4, 2016) ("[A] second 30-day validation notice sent by a debt collector only enlarges a debtor's rights and does not violate the FDCPA."); *Bridges v. Performant Recovery, Inc.*, No. 5:15-CV-38 (CAR), 2015 WL 8773340, at *3 (M.D. Ga. Dec. 14, 2015) ("[T]he Second Letter does not overshadow the 30-day period; in fact, it only extended Plaintiff's time to assert his rights and is therefore not a violation of the FDCPA.")

Plaintiff cites two decades-old cases which came to the opposite conclusion. *See* Pl.'s Br. 13 (citing *Norton v. Wilshire Credit Corp.*, Civ. No. 95-3223 (WHW), 1997 U.S. Dist. LEXIS 23360, at *9, *25–26 (D.N.J. July 15, 1997) and *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 527–28 (E.D. Pa. 1996)). Both of these cases involved multiple debt collection letters with repeated validation notices, but the real FDCPA

problem that the courts identified was that the letters contained language which contradicted the validation notice. *See Norton*, 1997 U.S. Dist. LEXIS 23360, at *23 ("All letters contained what appears to be a boilerplate statement on the bottom notifying the consumer that he or she would have thirty days to dispute the debt. However, all letters, in the body, set out a shorter time period for payment than thirty days."); *Adams*, 926 F. Supp. at 527 ("[L]anguage calling for 'immediate' payment contradicts the validation notice[.]"). Thus these cases are inapposite.

A debt collector's issuance of a second debt collection letter with a second validation notice does not overshadow the original validation notice nor would it confuse the LSC. Instead, it grants the consumer additional time to dispute the debt, which the debt collector is permitted to do. Therefore, I dismiss Count Four as it does not state a claim for which relief can be granted.

## II. Requirement that the Consumer Dispute the Debt in Writing

Count Five alleges that the debt collection letters falsely suggest that a consumer may only dispute a debt in writing. *See* Am. Compl. ¶¶ 103–36; Pl.'s Br. 16. Plaintiff is correct that such a suggestion would violate the FDCPA because it would overshadow the validation notice and be misleading. Pl.'s Br. 16. Clear Second Circuit precedent states that the FDCPA requires that consumers be allowed to dispute a debt orally. *Hooks*, 717 F.3d at 286. However, plaintiff's application of this rule to this case is incorrect. The letters at issue in this case do not suggest that a consumer may only dispute a debt in writing, and thus, plaintiff has failed to state a claim.

Plaintiff's argument is based on the emphasized text on the detachable coupon

11

which states "MAIL ALL CORRESPONDENCE TO [LJ Ross's address]." But reading the letter as a whole, it is clear that the consumer may also contact the defendant by telephone. The letter lists LJ Ross's telephone number twice: once on the coupon, directly below the address, and also in a prominent position right above the detachable coupon. Hours of operation are provided. There is even a picture of a telephone, alerting the consumer to the fact that telephone communication is a possibility, and drawing their attention to the telephone number and hours. It *is* "a stretch of the imagination to posit that the LSC would be led to believe that the only way to dispute the Alleged Debt is by notifying the Defendant in writing at the PO Box address." *Cf.* Pl.'s Br. 17.

I addressed a very similar claim last year in *Goodman v. Mercantile Adjustment Bureau, LLC*, No. 18-cv-04488 (ARR) (SJB), 2019 WL 692934 (E.D.N.Y. Feb. 19, 2019). In that case, plaintiff claimed that the phrase "send payment and correspondence to: [address]" overshadowed the validation notice and was misleading because it suggested that disputing a debt requires written communication. *Id.* at *2. I held that the LSC would not be misled by this language where, as here, the letter listed the defendant's phone number multiple times. *Id.* at *4–5. The same analysis applies to the instant case.

The issue presented in this case is more similar to *Goodman* than the four other EDNY cases that plaintiff relies on. *See* Pl.'s Br. 18 (citing *Balke v. All. One Receivables Mgmt., Inc.*, No. 16-cv-5624(ADS)(AKT), 2017 WL 2634653 (E.D.N.Y. June 19, 2017); *Vetrano v. CBE Grp., Inc.*, No. CV 15-3185 (JS) (AKT), 2016 WL 4083384 (E.D.N.Y. Aug. 1, 2016); *Abramov v. I.C. Sys., Inc.*, 54 F. Supp. 3d 270 (E.D.N.Y. 2014); *Lotito v. Recovery Assocs. Inc.*, No. 13-CV-5833 (SJF)(AKT), 2014 WL 4659464 (E.D.N.Y. Sept.

17, 2014)). The *Vetrano*, *Abramov*, and *Lotito* courts all took issue with an instruction specifically including the phrase "written disputes" or "disputes in writing." *See Vetrano*, 2016 WL 4083384, at *9 ("[T]he Court at this juncture cannot say that, as a matter of law, the phrase 'Forward written disputes to: [address]' as written and when read in conjunction with the first sentence of the validation notice did not violate the FDCPA[.]"); *Abramov*, 54 F. Supp. 3d at 277 ("[H]ad the communication omitted the words 'in writing' in the [instruction], the Court would find, as a matter of law, that the communication complied with Section 1692g(a)."); *Lotito*, 2014 WL 4659464, at *1, *8 (denying motion to dismiss where the letter stated, "Be advised that should you not dispute this matter in writing within 30 days of our first communication to you, we will assume that our information is correct and proceed accordingly"). No such language is present in LJ Ross's letter. The *Balke* letter expressly limited telephone communications to calls about "negotiating a suitable arrangement" for consumers with "financial difficulties." 2017 WL 2634653, at *8. Again, no such language is present in LJ Ross's letter. Thus, plaintiff's citations do not advance her argument.

Plaintiff has failed to state a claim that the defendant violated the FDCPA by falsely suggesting that disputes must be made in writing. Therefore, Count Five of the Amended Complaint is dismissed.

### III. Class Certification

Rosen's remaining three causes of action (Counts One, Two, and Three) all concern her claim that she does not actually owe the debt stated in the letters. Am. Compl. ¶¶ 44–

84. LJ Ross requests that I dismiss Rosen's class allegations because these three claims are factually specific to the plaintiff and are not appropriate for class certification. Def.'s Mem. of Law in Supp. of Mot. to Dismiss 11–12, ECF No. 19. This motion is premature, as it comes before any discovery or even the filing of a motion for class certification. *See Parker v. Time Warner Entm't Co., L.P.*, 331 F.3d 13, 21 (2d Cir. 2003); *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 404 (W.D.N.Y. 2010) ("I see no reason to depart from the usual practice by deciding now, on a motion to strike, whether Ironforge's claims are typical of those of the proposed class."). LJ Ross's motion to dismiss the class allegations is denied as premature at this time without prejudice to renewal.

## CONCLUSION

For the reasons described above, Counts Four and Five of the Amended Complaint are dismissed. Plaintiff may proceed on Counts One, Two, and Three. I will not decide the class certification issue as to those three claims at this juncture.

SO ORDERED.

                   /s/
                 Allyne R. Ross
                 United States District Judge

Dated: March 23, 2020
     Brooklyn, New York