UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEA ROSEN,<br><br>   *Plaintiff*,<br><br> — against —<br><br>L J ROSS ASSOCIATES, INC.,<br><br>   *Defendant*. | **19-CV-5516 (ARR) (VMS)**<br><br>**Opinion & Order**<br><br>**Not for print or electronic publication** |

ROSS, United States District Judge:

  Plaintiff, Lea Rosen, has brought suit against defendant, L J Ross Associates, Inc. ("LJRA"), a debt collection agency, claiming that defendant overstated the amount of debt she owed to Con Edison in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq*. Plaintiff now moves for summary judgment and defendant cross-moves for summary judgment. For the following reasons, I grant plaintiff's motion and deny defendant's cross-motion.

## BACKGROUND

  Prior to November 2018, plaintiff, Lea Rosen, opened an account with Con Edison. Pl.'s Statement of Material Facts ¶ 5 ("Pl.'s R. 56.1"), ECF No. 45-4. Plaintiff fell behind on payments and her debt was transferred to defendant, LJRA, a third-party debt collector, for collection. *Id.* ¶¶ 3, 6–7. On October 1, 2018, defendant sent a letter to plaintiff stating, "Amount Due: $543.93" and "This is an attempt to collect a debt." Oct. 1, 2018 Letter ("October Letter"), Def.'s Cross Mot. Summ. J. ("Def.'s Mot.") Ex. 1, ECF No. 44. The parties agree that this letter "was an attempt to collect a debt." Def.'s Statement of Material Facts ¶ 9 ("Def.'s R. 56.1"), ECF No. 44; Pl.'s Resp.

1

Def.'s R. 56.1 ¶ 9, ECF No. 44. After the October Letter was sent, plaintiff's husband, Abraham Rosen, made a payment of $100 toward plaintiff's debt. Def.'s R. 56.1 ¶ 10; Pl.'s Resp. Def.'s R. 56.1 ¶ 10.

On November 8, 2018, Mr. Rosen called LJRA to discuss his wife's account, but the representative terminated the call because she was unable to verify the identity of the caller. Tr. Audio Recording Nov. 8, 2018 Phone Call ("Nov. 8 Phone Call"), Def.'s Mot. Ex 7, ECF No. 44. On November 20, 2018, a different LJRA representative called and asked to speak to Lea Rosen about the outstanding debt. Tr. Audio Recording Nov. 20, 2018 Phone Call 2:14–3:2 ("Nov. 20 Phone Call"), Def.'s Mot. Ex. 3, ECF No. 44. The representative asked the person on the other end of the phone call, "Is this Lea Rosen?" to which the person—identified as Abraham Rosen in the transcript—answered "Yes." *Id.* at 2:14–15. In his deposition on November 3, 2020, Mr. Rosen identified himself as the speaker on the call and stated, "If they called and I picked up the phone and they asked for Lea, I would say yes, because the next thing is they explain to me what they want because she doesn't speak English." Tr. Abraham Rosen Dep. 28:15–18, 43:2–10, Def.'s Mot. Ex. 6, ECF No. 44.

During the November 20 phone call, the LJRA representative stated that plaintiff had "a balance in our office for $443.93." Nov. 20 Phone Call 3:1–2. Mr. Rosen and the representative discussed an installment payment plan, and Mr. Rosen requested that defendant "send me bills" and "send me something in writing." *Id.* at 3:21–22, 4:11–12. The representative asked whether plaintiff had received defendant's previous letter, to which Mr. Rosen responded "No." *Id.* at 4:15. The representative then stated that she would send plaintiff a "validation letter." *Id.* at 5:7–8.

On the day after the phone call, defendant sent plaintiff a letter stating, "Statement Date: November 21, 2018" and "Amount Due: $543.93," along with the language, "[t]his is an attempt

2

to collect a debt." Nov. 21, 2018 Letter ("November Letter"), Def.'s Mot. Ex. 2, ECF No. 44. Rebecca Roberts-Stewart, LJRA's Chief Operations Officer, testified that "the only reason [the November Letter] was generated was based on the request from [Abraham] Rosen" and that the November Letter was "not a collection letter" but a "copy of the [October] letter." Tr. Rebecca Roberts-Stewart Dep. 16:12–13, 21:1–2, Def.'s Mot. Ex. 8, ECF No. 44. Mr. Rosen testified that he was not requesting a copy of the "old letter" but rather a statement of "what I owe and how my installments will be." Tr. Abraham Rosen Dep. 49:21–23.

## LEGAL STANDARD

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed factual issues but to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (citation, quotation marks and ellipsis omitted). "There is no genuine issue of material fact where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (citation omitted).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir.

3

2011) (quoting *In re Bennett Funding Grp., Inc.*, 336 F.3d 94, 99 (2d Cir. 2003)); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment, the nonmoving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (citing *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir. 1994)). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

### B. Section 1692e of the FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Section 1692e forbids "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.*; *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996). Subsection 1692e(2)(A) prohibits "[t]he false representation of . . . the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Subsection 1692e(10) is a "catch-all provision" barring "'[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.'" *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 194 (2d Cir. 2015) (quoting 15 U.S.C. § 1692e(10)).

4

"[T]he question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993)). "This objective standard is designed to protect all consumers, the gullible as well as the shrewd, while at the same time protecting debt collectors from liability for bizarre or idiosyncratic interpretations of collection notices." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998) (citation and quotation marks omitted); *see also Clomon*, 988 F.2d at 1318–19 ("[I]n crafting a norm that protects the naive and the credulous[,] the courts have carefully preserved the concept of reasonableness").

Under the FDCPA, "a collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell*, 74 F.3d at 35. Because the FDCPA imposes strict liability on debt collectors, plaintiff "need not show intentional conduct by the debt collector to be entitled to damages." *Id.* at 33.

## DISCUSSION

Plaintiff argues that defendant's November Letter violated the FDCPA because it overstated the amount of the debt. Pl.'s Mot. Summ. J. 3 ("Pl.'s Mot."), ECF No. 45-5. Defendant, in its cross motion, argues that the FDCPA does not apply to the November Letter because (1) the communication was not initiated by defendant and (2) the Letter was not an attempt to collect a debt but rather a copy of the October Letter sent in response to Mr. Rosen's request. Def.'s Mot. 13. Even if the FDCPA does apply to the November Letter, defendant argues that the Letter "cannot be reasonably interpreted to violate § 1692e" because plaintiff's husband was informed of the correct amount of debt owed in the November 20 phone call and plaintiff, herself, never read the November Letter and was therefore never confused by it. *Id.* at 17.

5

I.  **The FDCPA applies to the November Letter.**

A communication from a debt collector is subject to the FDCPA "only if it is made 'in connection with the collection of [a] debt.'" *Araujo v. PennyMac Loan Servs., LLC*, No. 15-CV-62 (DLI) (LB), 2015 WL 5664259, at *3 (E.D.N.Y. Sep. 23, 2015) (quoting 15 U.S.C. § 1692e). "[C]ourts have consistently held that the FDCPA's protections are not triggered by communications initiated by someone other than the debt collector" because "when the consumer initiates the communications, many of the policy reasons behind the FDCPA disappear." *Id.* (citations and quotation marks omitted). In *Araujo v. PennyMac Loan Servs., LLC*, for example, the court found that the FDCPA did not apply to the communication between the plaintiff and the debt collection agency because the agency was responding to the plaintiff's request for the "original note for [her] mortgage as well as loan documents." *Id.* at *1. In response to the plaintiff's request, the defendant sent the plaintiff a copy of her note accompanied by a letter that stated "[Defendant] recently received a request for copies of your loan documents for the above referenced loan. We have enclosed the documents requested." *Id.* The court noted that the communication from the defendant "did not demand or seek to induce any payment, discuss any specifics of the underlying debt, or make any representation except that Defendant was in receipt of Plaintiff's inquiry and had enclosed the requested documentation." *Id.* at *3. Therefore, the court reasoned, "Defendant's communication merely provided a ministerial response to Plaintiff's inquiry and, therefore, did not trigger the FDCPA protections." *Id.*

I reject defendant's argument that the logic of *Araujo* applies to the present case, which involves an entirely different set of facts. First, although defendant asserts that the November Letter was a "copy" of the October Letter that "was generated [] based on the request from [Abraham] Rosen," Tr. Rebecca Roberts-Stewart Dep. 16:2–4, 12–13, it is not clear from the

6

record that Mr. Rosen was in fact requesting a copy of the October Letter. During the November 20 phone call, Mr. Rosen asked the representative to "[s]end [him] bills" and "send [him] something in writing" after they discussed a payment plan and *before* they discussed whether or not he had received the October Letter. Nov. 20 Phone Call 3:21–22, 4:11–12. Indeed, Mr. Rosen denied that he was asking for a copy of the October Letter, stating in his deposition that he was instead asking for a written communication of "what I owe and how my installments will be, not say send me – send out old letter." Tr. Abraham Rosen Dep. 49:21–23; *see also id.* at 52:1–3. Second, defendant's intention to send a copy of the October Letter rather than an attempt to collect a debt was also unclear. Unlike the letter in *Araujo*, which "did not demand or seek to induce any payment, discuss any specifics of the underlying debt, or make any representation except that Defendant was in receipt of Plaintiff's inquiry and had enclosed the requested documentation," 2015 WL 5664259, at *3, the November Letter states "[t]his is an attempt to collect a debt" and asserts that as of "November 21, 2018," the amount due is $543.93, November Letter.

Finally, defendant has not shown that the communication was "initiated by someone other than the debt collector." *Araujo*, 2015 WL 5664259, at *3. Although Mr. Rosen called defendant on an earlier date to ask about plaintiff's account, *see* Nov. 8 Phone Call, there is no evidence to suggest that the November 20 phone call—initiated by a different LJRA representative twelve days later—was in response to Mr. Rosen's earlier call. The representative did not mention Mr. Rosen's earlier call and stated at the beginning of the conversation that she was calling "in an attempt to collect a debt." Nov. 20 Phone Call 2:22–24. In *Araujo*, by contrast, it was the plaintiff who contacted the defendant to ask for a copy of her mortgage documentation, prompting the defendant to send a copy that same day. 2015 WL 5664259, at *3; *see also, e.g.*, *Boyd v. J.E. Robert Co.*, No. 05-CV-2455 (KAM) (RER), 2010 WL 5772892, at *13 (E.D.N.Y. Mar. 31, 2010)

7

(finding that the FDCPA did not apply where the plaintiff "failed to allege, let alone present any evidence, that the [] defendants initiated any of [the] communications"), *R&R adopted*, 2011 WL 477547 (E.D.N.Y. Feb. 2, 2011). Here, defendant initiated the phone call that resulted in the November Letter. In both the letter and during the phone call, defendant stated that it was attempting to collect a debt. November Letter; Nov. 20 Phone Call 2:22–24.

Therefore, defendant has failed to show that its November Letter was not a communication made "in connection with the collection of [a] debt." 15 U.S.C. § 1692e. Accordingly, I find that the FDCPA applies.

**II.   The November Letter violates the FDCPA.**

Defendant argues that even if the FDCPA applies to the November Letter, the Letter "cannot be reasonably interpreted to violate § 1692e" because "a reasonable jury could not find, given the context, that Plaintiff was reasonably misled or confused by the November Letter, including as to the amount of the debt." Def.'s Mot. 17. I disagree. As discussed above, the letter provides a "[s]tatement [d]ate" of November 21, 2018 and an "[a]mount [d]ue" of $543.93, along with the language that "[t]his is an attempt to collect a debt." November Letter. Under the least sophisticated consumer standard, a reasonable consumer—and especially a "naïve," "credulous" or "gullible" one—could interpret the November Letter as an attempt to collect a debt in the amount of $543.93. *Clomon*, 988 F.2d at 1318–19.

The fact that Mr. Rosen was informed of the correct amount by telephone before plaintiff received the Letter does not alter my analysis. *See Vangorden v. Second Round, Ltd. P'ship*, 897 F.3d 433, 442 (2d Cir. 2018) ("Nor is such a misrepresentation [of the amount of debt] rendered less false or misleading by the fact that the debt had existed at one time, but had been settled by the consumer" because "upon receipt of a debt collection letter misstating a debt obligation and

8

requesting payment, a consumer—and, particularly, a least sophisticated consumer—might question whether she had indeed satisfied the debt and make payment anew out of fear and confusion." (quotation marks omitted)). As plaintiff points out, although Mr. Rosen had been told over the phone that his debt was $100 less than the amount stated in the letter, the least sophisticated consumer still could reasonably be caused to "question if her prior payment was not properly applied to her account" or "if additional charges or fees had been added since her payment was made." Pl.'s Mot. 7–8.

Nor does the fact that plaintiff testified that she did not recall ever reading the November Letter carry any weight. Def.'s Mot. 17. The least sophisticated consumer standard is an objective one and, as established above, the least sophisticated consumer could reasonably be misled by the November Letter.

Therefore, because the November Letter could reasonably be interpreted as a "false representation" of the amount of plaintiff's debt, the Letter violates the FDCPA. 15 U.S.C. § 1692e(2); *see Vangorden*, 897 F.3d at 442 (noting that the Second Circuit "has held that even a partial misstatement of a consumer's debt obligation can be misleading under the FDCPA"); *see also, e.g.*, *Brake v. Slochowsky & Slochowsky, LLP*, 504 F. Supp. 3d 103, 113 (E.D.N.Y. 2020) ("Courts in this circuit have held that inaccurate statements made by debt collectors regarding the amount of [a debt] owed states a plausible claim for a § 1692e violation."); *Sanchez v. Ehrlich*, No. 16-CV-8677 (LAP), 2018 WL 2084147, at *5 (S.D.N.Y. Mar. 29, 2018) (finding that the plaintiff adequately pleaded that the defendants violated Section 1692e because "[d]efendants sent her a notice requesting a payment that she did not, in fact, owe, thereby misrepresenting the character, amount and legal status of her debt").

**III.     Defendant has not shown that its violation resulted from a bona fide error.**

Plaintiff "need not show intentional conduct by the debt collector" in order to trigger the protections of the FDCPA. *Russell*, 74 F.3d at 33. However, the statute "precludes liability for an unintentional violation if the defendant has shown by 'a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Cacace v. Lucas*, 775 F. Supp. 502, 505–06 (D. Conn. 1990) (quoting 15 U.S.C. § 1692k(c)).

Defendant argues that in the event that I find that it has violated the FDCPA, it is exempt from liability under the bona fide error defense. Def.'s Mot. 10. Defendant has failed to establish the elements of this defense, however, because the record lacks sufficient evidence that defendant maintained "procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). The deposition of defendant's COO contains the vague assertion that the company has "internal policies in place to assure that we do the right steps" and that there is a "normal practice" of honoring consumers' requests for copies of their statements. Tr. Rebecca Roberts-Stewart Dep. 24:14–17, 29:17–20. Defendant claims that this practice of sending copies of statements to consumers "coupled with verbally advising" consumers of the correct amount of debt owed is sufficient evidence that the November Letter was consistent with a policy "reasonably adapted to prevent a FDCPA violation in this regard." Def.'s Opp'n Pl.'s Mot. Summ. J. 10, ECF No. 45-7. Nowhere in the record, however, does defendant show that the practice of sending copies of statements to consumers—without any indication that the communications are copies of old statements as opposed to new attempts at debt collection—is "reasonably adapted" to avoid a misrepresentation of the amount of debt owed. Nor is there any indication that "verbally advising" debtors of the correct amount of debt owed is a "policy" all. *Id*. In support of its claim that it has a

10

policy of verbal advisement, defendant merely cites the transcript of the November 20 phone call with Mr. Rosen. *Id.* Defendant does not make any attempt to show that the representative's verbal statement of the correct debt amount was an implementation of a broader policy or that it was connected to Mr. Rosen's request for a statement, which was in fact made *after* the representative stated the correct amount. Therefore, defendant has not made a sufficient showing to support its bona fide error defense. *See Linza v. Outsource Receivables Mgmt., Inc.*, No. 17-CV-1324 (GWC), 2021 WL 2209408, at *5 (W.D.N.Y. Feb. 4, 2021) (finding that the defendant's failure to "identify or describe any" such policies "necessarily result[ed] in summary judgment against [the defendant] on that issue").

## STATUTORY DAMAGES

Under 15 U.S.C. § 1629k(a)(2)(A), plaintiff is entitled to statutory damages "as the court may allow, but not exceeding $1,000." The court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *Id.* § 1692k(b)(1). Courts have imposed the maximum fine in cases where defendants violated the FDCPA repeatedly or in multiple ways. *See, e.g.*, *Cacace*, 775 F. Supp. at 507 (awarding $1000 in statutory damages where the defendant "violated the FDCPA in several respects" and continued sending improper collection letters even "after the impropriety of such conduct was brought to his attention"); *Ellis v. Solomon & Solomon, P.C.*, 599 F. Supp. 2d 298, 305 (D. Conn. 2009) (awarding the maximum statutory damages upon a finding of "sufficient frequency and persistence of conduct"), *aff'd*, 591 F.3d 130 (2d Cir. 2010).

Here, defendant has committed one violation of the FDCPA. There is no indication that this noncompliance was intentional. Defendant's culpability in sending its misleading letter, which overstated plaintiff's debt by $100, is mitigated somewhat by the fact that defendant verbally

11

informed plaintiff of the correct amount owed. Therefore, an award of the maximum amount of statutory damages is unwarranted. Having considered all the factors enumerated in 15 U.S.C. § 1692k(b)(1), I award plaintiff $500.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted. Defendant's motion for summary judgment is denied. I award plaintiff statutory damages in the amount of $500. Plaintiff's claims for attorney's fees and costs pursuant to § 1692k(a)(3) are referred to the Honorable Vera M. Scanlon. The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

Dated:      July 22, 2021                             ____/s/_____
            Brooklyn, NY                              Allyne R. Ross
                                                      United States District Judge